IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ROBIN DEMETRECE WATTS,
     Plaintiff,

vs.                                                                   Case No. 5:07cv128/MCR/EMT

MARK SMITH, et al.,
     Defendants.

_____/

## ORDER

Plaintiff, a Florida inmate proceeding pro se and in forma pauperis, initiated this civil rights action by filing a complaint under 42 U.S.C. § 1983 (Doc. 1).  Now before the court is Plaintiff's amended complaint (Doc. 10 (hereafter "complaint")).  From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants.  Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in a second amended complaint.

Plaintiff names six Defendants in this action: Mark Smith, Detective at the Panama City Police Department ("PCPD"); Neil Delmar, Detective at the Bay County Sheriff's Office ("BCSO"); Kevin Miller, Sergeant at PCPD; Kathy McCurdy, Captain at PCPD; Frank McKeithen, Sheriff of Bay County; and Debbie Anderson, Investigator at BCSO (Doc. 10 at 1, 2 and continuation pages). In brief, Plaintiff alleges that on September 20, 2006, Defendant Smith "submitted an affidavit that contained statements he knew was [sic] false to a magistrates [sic] [concerning Plaintiff's alleged failure to register as a violent criminal offender] and had a warrant issued for Plaintiff's arrest" (*id.* at 7). Plaintiff describes the process by which numerous law enforcement officers investigated his alleged failure to register, all of which apparently led to Plaintiff's arrest on October 8, 2006 for failure to register (*see id.* at 4–7 (describing the investigation)).  For example, Plaintiff alleges that

Defendant Smith received an "address verification" from Defendant Anderson on September 8, 2006 (*id.* at 6).  Plaintiff further alleges that Defendant Miller submitted the "discovery" of Plaintiff's failure to register to Defendant McCurdy, who then sent it to Assistant State Attorney Marial Dykes (*id.* at 7).  Plaintiff also contends that Defendants Anderson, Delmar, Smith, and McCurdy "did exchange information and were required to about [sic] violent career offender" (*id.* at 8).  Subsequently, Plaintiff was arrested on October 8, 2006, for failure to register as a violent criminal offender pursuant to case number 06-3260.  Plaintiff alleges that on March 28, 2007, his criminal defense attorney filed a motion to dismiss "case 06-3260 charge violent career offender," and the state court granted the motion on April 3, 2007 (*id.* at 8).

On the basis of these facts, Plaintiff alleges that he has been "falsely arrested, falsely imprisoned, maliciously arrested, maliciously arrested without probable cause, illegally arrested, illegally arrested without probable cause, subject to malicious prosecution, defamation of character, and libel and slander" (*id.* at 10).  For relief, Plaintiff requests "financial compensation," including compensation for lost wages, mental anguish, and pain and suffering; punitive damages; "mental anguish and pain and suffering [damages] for [his] family"; a written and oral apology; and any other relief the court deems just and proper (*id.* at 10).

Initially, Plaintiff's complaint fails to state a basis for liability as to Defendant McKeithen or Defendant McCurdy.[1]  It appears that Plaintiff names Defendants McKeithen and McCurdy solely based on their status as supervisory officials and not because of their specific involvement in the incidents that precipitated Plaintiff's complaint.  Plaintiff is advised, however, that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a

---

[1]The court notes that Defendant McCurdy is a Captain who is apparently responsible for officers and detectives that work for PCPD.

history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, to the extent that Plaintiff alleges Defendant McCurdy and Defendant McKeithen are liable solely because of their supervisory positions, Plaintiff has failed to state a viable Fourth Amendment claim as to these Defendants.  Therefore, unless additional facts exist and are alleged, Plaintiff should drop Defendants McKeithen and McCurdy from his second amended complaint.

As to the remaining Defendants, Plaintiff appears to allege that Defendants Anderson, Delmar, Miller, and Smith unlawfully arrested him in violation of his fourth amendment rights. The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990). However, a claim of false arrest is barred by the existence of probable cause, Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990), or by the subsequent conviction of the accused. Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986); *see also* King v. Goldsmith, 897 F.2d 885, 886 (7th Cir. 1990); Malady v. Crunk, 902 F.2d 10, 11 (8th Cir. 1990); Epstein v. Toys-R-Us Del., Inc., 277 F. Supp. 2d 1266, 1274 (S.D. Fla. 2003) (finding that conviction of the accused "is conclusive evidence of the existence of probable cause for the arrest"). Although Plaintiff alleges he was not convicted of failing to register as a career offender, he cannot prevail on an unlawful arrest claim if there was probable cause for his arrest.

A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on objective standards. Von Stein, 904 F.2d at 578 (citations omitted). Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking. Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9.

It is apparent that Plaintiff has not stated a valid Fourth Amendment claim against Defendants Anderson, Delmar, and Miller. Plaintiff's complaint makes only peripheral references to Defendants Anderson, Delmar, and Miller, and it further appears that these references are but descriptions of cursory duties performed by them. Plaintiff alleges that Defendant Anderson "gave Detective Smith an address verification" (Doc. 10 at 6); Defendant Miller "gave Captain [] McCurdy the discovery that was done on Plaintiff's case" (*id.* at 7); and Defendant Delmar, with Defendants Anderson, Smith, and McCurdy, "exchanged information" (*id.* at 8). Plaintiff has not alleged that Defendants Anderson, Delmar, and Miller were involved in procuring a warrant on

information they knew to be false in order to effect the arrest of Plaintiff.  Indeed, there is no indication that they knew the information allegedly supplied by Defendant Smith was false.  Further, Plaintiff has not alleged that any actions taken by Defendants Anderson, Delmar, and Miller in the events leading up to his arrest were malicious.  Plaintiff admits that these three officers "exchanged information <u>and were required to</u> [do so] about violent career offender[s]" (*id.* at 8) (emphasis added).  Thus, Plaintiff allegations suggest that Defendants Anderson, Delmar, and Miller were not acting with any malicious intent.  Moreover, Plaintiff has not alleged that Defendants Anderson, Delmar, and Miller acted without probable cause at any time in the course of the investigation.  The facts and circumstances apparently within the knowledge of those Defendants would have caused a prudent officer to believe that Plaintiff was in fact committing a crime by failing to register as a violent criminal offender.  Defendants Anderson, Delmar, and Miller acted upon reasonably trustworthy information, an affidavit from Defendant Smith, and the conclusory allegation that Defendant Smith knowingly fabricated the affidavit does not impute a malicious intent or the knowledge of any falsity to the officers who later acted upon that affidavit.  Finally, Plaintiff has not alleged that Defendants Anderson, Delmar, or Miller falsified any information or acted upon information they knew to be false.  Therefore, Plaintiff should drop Defendants Anderson, Delmar, and Miller from his second amended complaint; or, if further facts exist, they must be alleged in order to state a viable basis for relief as it pertains to these Defendants.

Finally, to the extent Plaintiff seeks relief from Defendant Smith in the form of monetary damages, Plaintiff is advised that he cannot recover compensatory or punitive damages from Defendant Smith, because he has not alleged any physical injury resulting from Defendant Smith's actions.  Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims.  <u>Napier v. Preslicka</u>, 314 F.3d 528, 532 (11th Cir. 2000) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 984–85 (11th Cir. 2000) (en banc)).  In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury.  <u>Harris v. Garner</u>, 190 F.3d 1279, 1286–87 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in*

*pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000)) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd*. 263 F.3d 169 (11th Cir. 2001) (Table), *cert. denied*, 536 U.S. 906, 122 S. Ct. 2362, 153 L. Ed. 2d 183 (2002) (holding that a prisoner plaintiff may not recover compensatory or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury).

Furthermore, although some Circuit Courts have held that section 1997e(e) does not limit the recovery of punitive damages based solely on the alleged constitutional violation, Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 251–53 (3d Cir. 2000), the Eleventh Circuit in Harris declined to make such a distinction.  To the contrary, while the Harris court was careful to note that its holding was not binding on actions for nominal damages that are normally available for the violation of certain "absolute constitutional" rights without any showing of injury, it made no such reference to actions for punitive damages based solely on the alleged constitutional violation.  Harris, 190 F.3d at 1288 n.9.  In so noting, the court cited Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054, 55 L. Ed. 2d 252 (1978), where the Supreme Court made a distinction between nominal damages and substantial damages (i.e., compensatory and punitive) damages.  Harris, 190 F.3d at 1288 n.9.  Moreover, in analyzing the types of claims precluded by § 1997e(e), the Harris court followed closely the reasoning of Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998), which held that punitive damages based on the constitutional violation itself would not be available without the requisite physical injury requirement.  Harris, 190 F.3d 1288.  Thus, Plaintiff is not entitled to "financial compensation" or punitive damages, and he should drop his requests for such relief in his second amended complaint.

Plaintiff should carefully review the foregoing.  If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Second Amended Complaint."  Plaintiff must limit his allegations to claims related to the same basic incident or issue

and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  Specifically, unless other undisclosed facts exist and are alleged, Plaintiff should name only Defendant Smith in his second amended complaint.  Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Second Amended Complaint."

3.      Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 6th day of August 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**