IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ROBIN DEMETRECE WATTS,
     Plaintiff,

vs.                                        Case No. 5:07cv128/MCR/EMT

MARK SMITH, et al.,
     Defendants.
_____/

## **ORDER**

Plaintiff, a Florida inmate proceeding pro se and in forma pauperis, initiated this civil rights action by filing a complaint under 42 U.S.C. § 1983 (Doc. 1). Now before the court is Plaintiff's second amended complaint (Doc. 12). From a review of the second amended complaint, it is evident that the facts as presented still fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants. Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in a third amended complaint.

Plaintiff names two Defendants in this action: Mark Smith, Detective at the Panama City Police Department ("PCPD") and Frank McKeithen, Sheriff of Bay County (Doc. 12 at 1, 2). In brief, Plaintiff alleges that on September 20, 2006, Defendant Smith "submitted an affidavit that contained statements he knew was [sic] false to a magistrates [sic] [concerning Plaintiff's alleged failure to register as a violent criminal offender] and had a warrant issued for Plaintiff's arrest that did not establish probable cause" (*id.* at 6). Defendant Smith allegedly submitted this affidavit after an investigation conducted by Defendant Smith and numerous other police officers (*see id.* at 5–6). Plaintiff was arrested on October 8, 2006, for failure to register as a violent criminal offender pursuant to case number 06-3260 (*id.* at 6). Plaintiff alleges that on March 28, 2007, his criminal defense attorney filed a motion to dismiss "case 06-3260 charge violent career offender," and the

state court granted the motion on April 3, 2007 (*id.* at 7, continuation page).

On the basis of these facts, Plaintiff alleges that he has been "falsely arrested without probable cause, falsely arrested, maliciously arrested without probable cause, maliciously arrested, [and subject to] libel and slander and defimation [sic] of character"  (*see id.* at 7, continuation page 2).  For relief, Plaintiff requests "lost wages, . . . mental anguish, and pain and suffering, written and oral appology [sic], jury trial, and whatever else the court deems just and proper" (*id.* at 7).  Plaintiff also demands costs and attorney's fees (*id.*).

Initially, as Plaintiff has been informed, Plaintiff has failed to state a basis for liability as to Defendant McKeithen (*see* Doc. 11 at 2).  Plaintiff names Defendant McKeithen solely based on his status as supervisory official and not because of his specific involvement in the incidents that precipitated Plaintiff's complaint (*see* Doc. 12 at 7, continuation page 2 (alleging false and malicious arrest and citing to statements of fact describing the police investigation)).  Plaintiff is advised that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not

alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  See Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

Here, to the extent Plaintiff alleges that Defendant McKeithen is liable solely because of his supervisory position, Plaintiff has failed to state a viable Fourth Amendment claim.  Therefore, unless additional facts exist and are alleged, Plaintiff should drop Defendant McKeithen from his third amended complaint.

Moreover, to the extent Plaintiff seeks relief from Defendant Smith in the form of monetary damages, Plaintiff is again advised that he cannot recover compensatory or punitive damages from Defendant Smith, because he has not alleged any physical injury resulting from Defendant Smith's actions (see Doc. 11 at 5–6).  Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims.  Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984–85 (11th Cir. 2000) (en banc)).  In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury.  Harris v. Garner, 190 F.3d 1279, 1286–87 (11th Cir. 1999), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in pertinent part en banc, 216 F.3d 970 (11th Cir. 2000)) ("We

therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd*. 263 F.3d 169 (11th Cir. 2001) (Table), *cert. denied*, 536 U.S. 906, 122 S. Ct. 2362, 153 L. Ed. 2d 183 (2002) (holding that a prisoner plaintiff may not recover compensatory or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury).

Furthermore, although some Circuit Courts have held that section 1997e(e) does not limit the recovery of punitive damages based solely on the alleged constitutional violation, Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 251–53 (3d Cir. 2000), the Eleventh Circuit in Harris declined to make such a distinction.  To the contrary, while the Harris court was careful to note that its holding was not binding on actions for nominal damages that are normally available for the violation of certain "absolute constitutional" rights without any showing of injury, it made no such reference to actions for punitive damages based solely on the alleged constitutional violation.  Harris, 190 F.3d at 1288 n.9.  In so noting, the court cited Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054, 55 L. Ed. 2d 252 (1978), where the Supreme Court made a distinction between nominal damages and substantial damages (i.e., compensatory and punitive) damages.  Harris, 190 F.3d at 1288 n.9.  Moreover, in analyzing the types of claims precluded by § 1997e(e), the Harris court followed closely the reasoning of Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998), which held that punitive damages based on the constitutional violation itself would not be available without the requisite physical injury requirement.  Harris, 190 F.3d 1288.  Thus, Plaintiff is not entitled to "lost wages" or compensatory damages for "mental anguish, and pain and suffering."  Indeed, on the basis of the facts presented, Plaintiff is not entitled to any monetary relief (with the exception of nominal damages), and he should drop his requests for such relief in his third amended complaint.

Plaintiff should carefully review the foregoing.  If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Third Amended

Complaint." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. <u>Specifically, unless other undisclosed facts exist and are alleged, Plaintiff should name only Defendant Smith in his third amended complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.</u> Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Third Amended Complaint."

3.      Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this <u>28</u><sup>th</sup> day of August 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**