IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBIN DEMETRECE WATTS,
    Plaintiff,

vs.                                      Case No. 5:07cv128/MCR/EMT

MARK SMITH, et al.,
    Defendants.
_____/

**ORDER**

    Plaintiff, a Florida inmate proceeding pro se and in forma pauperis, initiated this civil rights action by filing a complaint under 42 U.S.C. § 1983 (Doc. 1). Now before the court is Plaintiff's third amended complaint (Doc. 15). From a review of the third amended complaint, it is evident that the facts as presented still fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants. Therefore, the court will allow Plaintiff a final opportunity to clarify his allegations in a fourth amended complaint.

    Plaintiff names two Defendants in this action: Mark Smith, Detective at the Panama City Police Department ("PCPD"), and the Bay County Sheriff's Department ("BCSD") (Doc. 15 at 1, 2). Plaintiff alleges that it is a "policy or custom of the [BCSD] . . . to annually verify the addresses of [violent] career offenders who are not under the care, custody, control or supervision of the [Florida] Department of Corrections" ("DOC") (*id.* at 5). Plaintiff alleges that "Sheriff [McKeithen] is the policy maker for the [BCSD]" (*id.*). Plaintiff alleges that on September 8, 2006, the BCSD directed Defendant Smith to complete an address verification of Plaintiff (*see id.* at 5). However, Plaintiff alleges that he was not required to register as a violent career offender under any prior sentence(s) imposed upon him or by any other Florida law (*see id.* at 6). Plaintiff further alleges that on September 20, 2006, Defendant Smith "submitted an affidavit that contained statements he knew was [sic] false to a magistrate [concerning Plaintiff's alleged failure to register as a violent career

offender] and had a warrant issued for Plaintiff's arrest that did not establish probable cause" (*id.* at 6). Defendant Smith allegedly submitted this affidavit after an investigation conducted by Defendant Smith and other police officers (*see id.* at 5–6). Plaintiff was arrested on October 8, 2006, for failure to register as a violent career offender pursuant to case number 06-3260 (*id.* at 6). On October 11, 2006, Plaintiff alleges that because of Defendants' actions, "the [local newspaper] printed Plaintiff's name and picture . . . for failing to maintain an address as a violent career offender" (*see id.*). Plaintiff alleges that on March 28, 2007, his criminal defense attorney filed a motion to dismiss "case 06-3260 charge [violent] career offender failure to register," and the state court granted the motion on April 3, 2007 (*id.* at 7, continuation page).

On the basis of these facts, Plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated when Defendant Smith "submitted an affidavit that contained statements that he knew was [sic] false to a magistrate and had a warrant issued for Plaintiff's arrest that did not establish probable cause . . . ." (*id.* at 7). Plaintiff alleges that he was "false[ly] imprisoned, maliciously arrested, maliciously arrested without probable cause, falsely arrested without probable cause, falsely arrested, libel and slander, and defamation of character" (*id.*). For relief, Plaintiff requests "nominal damages, costs and attorneys fees . . . and [a] written and oral applogy [sic]" from Defendant Smith and "whatever else the court deems just and proper" (*id.*).

Initially, Plaintiff is advised that the BCSD is not a proper party to this proceeding. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. <u>Dean v. Barber</u>, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). In Florida, there is no such legal entity as the "Bay County Sheriff's Department." Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff. Art. VIII, §§ 1 (a) and (d), Fla. Const. However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name. See <u>Hobbs v. Holmes County Sheriff's Dep't</u>, No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity and that "[f]or claims against the [Holmes County] Sheriff's Department, the appropriate defendant is the Sheriff, Dennis Lee, in his official capacity."); <u>Turner</u>

v. Bieluch, No. 9:03cv81059, Doc. 12 (S.D. Fla. 2004) (concluding that Palm Beach County Sheriff's Office lacks capacity to be sued); Erickson v. Hunter, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); Jones v. Collier County Sheriff's Dep't, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued); *see also* Avant v. Rice, 1992 WL 359633, at *6 (M.D. Fla. Nov. 19, 1992) (unpublished opinion) (holding that county jail is not an actionable legal entity because it does not enjoy a separate legal existence independent of the county or the sheriff's office). Thus, Plaintiff should drop the BCSD as a Defendant in his fourth amended complaint.

Although in some instances a country sheriff in his official capacity is a proper defendant, the court notes that Plaintiff was previously advised to drop Sheriff McKeithen as a Defendant in this matter (*see* Doc. 14 at 3, 5).  Plaintiff was advised to drop him as a Defendant because Plaintiff sought to hold him liable on a respondeat superior theory (*see id*; *see also* Doc. 12 (second amended complaint)).  Plaintiff is reminded that, should he name Sheriff McKeithen in his official capacity as a Defendant in the fourth amended complaint, he must allege sufficient facts to hold the Sheriff liable.  It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the

deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

Here, Plaintiff has alleged that it is the policy of the BCSD, and Sheriff McKeithen as its chief policy maker, to annually verify the addresses of violent career offenders not under the care, custody, control, or supervision of the DOC (*see* Doc. 15 at 5). Plaintiff, however, has not alleged that it is a policy or custom of Sheriff McKeithen to require persons who are not violent career offenders to register their addresses; nor has Plaintiff alleged that it is a custom or policy of the Sheriff to arrest persons who failed to register that were not required to register. Plaintiff makes no allegation that the Sheriff personally participated in Defendant Smith's alleged unconstitutional conduct or that he even knew about it. Indeed, Plaintiff suggests that Defendant Smith acted unlawfully on one occasion when he knowingly submitted a false affidavit causing Plaintiff to be arrested without probable cause (*see id.* at 6). An isolated incident is generally insufficient to establish a supervisor's liability. Thus, unless additional facts exist and are alleged by Plaintiff, Plaintiff will not be able to state a claim against Sheriff McKeithen, and he should name only Defendant Smith as a Defendant in his fourth amended complaint.

Case No. 5:07cv128/MCR/EMT

Plaintiff should carefully review the foregoing.  If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Fourth Amended Complaint."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  <u>Specifically, unless other undisclosed facts exist and are alleged, Plaintiff should name only Defendant Smith in his fourth amended complaint.</u>  Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.  Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.	The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2.	Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Fourth Amended Complaint."

3.	Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 18th day of September 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 5:07cv128/MCR/EMT