IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBIN DEMETRECE WATTS,
    Plaintiff,

vs.                                       Case No. 5:07cv128/MCR/EMT

MARK SMITH, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

        This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon referral from the clerk. On September 27, 2007, Plaintiff, who is proceeding pro se and in forma pauperis in this action, filed a Fourth Amended Complaint (Doc. 20). Plaintiff alleges that Defendants, Sheriff Frank McKeithen and Detective Mark Smith, caused him to be falsely arrested for failure to register as a career offender, in violation of his Fourth and Fourteenth Amendment rights (*see id*. at 6, 7, 9).[1] Additionally, it appears that Plaintiff asserts various state tort claims (*id.* at 7). The court directed service of the Fourth Amended Complaint (hereafter "Complaint") on Defendants.

        On January 18, 2008, Defendant Smith filed a special report and supporting documents (Docs. 29, 30). On April 3, 2008, Defendant McKeithen filed a special report and supporting documents (Docs. 34, 35). On or about July 7, 2008, Plaintiff filed a reply to the special reports and supporting documents (Doc. 50). On August 5, 2008, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, informing the parties of the requirements of materials that may be considered on summary judgment, and informing the parties that the special reports would be construed as motions for summary judgment

---

[1] Plaintiff's supplemental pages were not numbered, therefore these page numbers reflect the page numbers assigned by the CM/ECF docketing system.

as of August 5, 2008, and taken under advisement on or after September 4, 2008 (Doc. 55; *see also* Doc. 36). None of the parties filed additional argument or Rule 56 materials.

Upon review of the summary judgment record, it is the opinion of the undersigned that Defendants' motions for summary judgment should be granted.

I.  BACKGROUND

Although, at the time of some of the events giving rise to this Complaint, Plaintiff was not incarcerated, he was later arrested and incarcerated at the Bay County Jail ("Jail") as discussed in greater detail *infra*. Plaintiff alleges the following facts in his verified Complaint. On September 25, 2000, Plaintiff was sentenced to fifteen (15) months of imprisonment in the Department of Corrections ("DOC") in Case Number 00-1800 (Doc. 20 at 6).[2] Plaintiff claims that the sentencing judge did not designate him as a violent career offender pursuant to the Florida Career Offender Registration Act ("Act") when he was sentenced in Case Number 00-1800, and the charges he pled to are not "enumerated felonies" that trigger the requirement to register; therefore, he never registered as a career offender (*id.*).[3] Plaintiff claims that Defendant Smith, a detective with the Panama City Police Department ("PCPD"), submitted a probable cause affidavit that contained false information regarding Plaintiff's career offender status in order to obtain a warrant for Plaintiff's arrest for failure to register as a career offender (*id.*). Plaintiff claims that Defendant Smith should have known Plaintiff was not a career offender when he reviewed the DOC and Department of Highway Safety and Motor Vehicles ("DHSMV") websites prior to applying for Plaintiff's arrest warrant (*id.* at 6; Doc. 50 at 2). Additionally, Plaintiff contends that Defendant McKeithen, Sheriff of the Bay County Sheriff's Office ("BCSO"), had a policy or custom of unlawfully arresting individuals who failed to register pursuant to the Act (Doc. 20 at 7). Plaintiff claims that Defendants violated his Fourth and Fourteenth Amendment rights by arresting him pursuant to a false probable

---

[2]In Case Number 00-1800, Plaintiff was charged with: Count 1, Possession of Cocaine with the Intent to Distribute; Count 2, Possession of Cocaine; Count 3, Possession of less than Twenty (20) Grams of Marijuana; and Count 4, Possession of Drug Paraphernalia (Doc. 30, Ex. 9). Plaintiff was sentenced to fifteen (15) months on Counts 1 and 2, and to "time served" on Counts 3 and 4 (*id.*). On September 25, 2000, Plaintiff also entered a plea of nolo contendere in case number 90-3087, and he was adjudicated guilty of aggravated battery (VOP) and sentenced to "time served" (*id.*).

[3]Section 775.261 of the Florida Statutes (The Florida Career Offender Registration Act), requires qualifying offenders to register with the sheriff's office in the county of their residence by providing detailed personal information, including their residence address, within two (2) days of release from prison.

Case No.: 5:07cv128/MCR/EMT

cause affidavit (*id.* at 7). Additionally, Plaintiff appears to assert state tort claims, including false arrest, false imprisonment, malicious prosecution, libel, slander and defamation (*id.*). As relief, Plaintiff seeks nominal damages, fees and costs associated with this litigation, written and oral apologies from Defendants, and "whatever else the court deems just and proper" (*id.*).

The following facts are without substantial controversy. Deborah Anderson, a crime analysis unit supervisor with the BCSO, requested that Defendant Smith verify Plaintiff's address at 1124 Bay Avenue, Panama City, Florida because the Florida Department of Law Enforcement ("FDLE") had notified the BCSO that Plaintiff was a career offender and was, therefore, required to register and maintain a valid address (Doc. 35, Affidavit of Deborah Anderson ¶ 3 & Ex. A). Defendant Smith determined that the Bay Avenue address was abandoned (Doc. 35, Attach. 2, Anderson Aff. ¶ 5). Next, Ms. Anderson requested that Detective Neil Delmar of the BCSO conduct an address verification for Plaintiff at 923 Sanders Lane (*id.* ¶ 6). Detective Delmar determined that Plaintiff did not live at the Sanders Lane address (*id.*). On September 20, 2006, Defendant Smith submitted a probable cause affidavit to obtain a warrant for Plaintiff's arrest for failure to register as a career offender (Doc. 30, Ex. 1-c at 9). The warrant was executed on October 8, 2006 (Doc. 30, Ex. 2).[4] After Plaintiff's arrest, the "advertiser" published Plaintiff's name and picture indicating that Plaintiff had been arrested for failing to maintain an address as a violent career offender (Doc. 20 at 7). Plaintiff's criminal charge of failure to register as a career offender was subsequently dismissed (*id.* at 7).[5]

---

[4]The warrant states, in pertinent part, as follows:

> Robin Watts [Plaintiff] is designated by the State of Florida as a career offender and did register his address with the state and obtain a Florida ID card bearing the address of 1124 Bay Ave. Panama City, F[L]. Upon conducting an address verification on the given address it was learned that Mr. Watts does not resided [sic] at the stated residence. It is further unknown at this time where Mr. Watts resides and therefore is in violation of his career offender status as set forth in Florida Statute 775.261.

(Doc. 30, Ex. 2).

[5]In Plaintiff's prosecution for failure to register as a career offender (Case Number 06-3260-CFA), Plaintiff's counsel filed a motion to dismiss, alleging that the registration requirements under the Act applied to offenders released on or after July 1, 2003; however, Plaintiff's counsel and the Assistant State Attorney were apparently unaware that the Act was amended on July 1, 2006, to retroactively require the registration of offenders released on or after July 1, 2002 (*see* Doc. 30, Ex. 6; *see also* Doc. 35 at 4). The motion to dismiss further stated that because Plaintiff was released from prison on December 10, 2002, he was not required to register as a career offender pursuant to the Act (Doc. 30, Ex. 3 at 12). The Assistant State Attorney did not oppose the motion, and the case was dismissed (Doc. 30, Ex. 4 at 19).

Case No.: 5:07cv128/MCR/EMT

Defendant McKeithen, in his motion for summary judgment, contends that he is entitled to summary judgment because Plaintiff has failed to set forth sufficient factual allegations to state a basis for liability against him in his individual or official capacity (Doc. 34 at 5–10). He additionally contends that sufficient probable cause existed for Plaintiff's arrest, and therefore, Plaintiff has failed to show a constitutional violation (*id.* at 11–16). In support of his motion for summary judgment, Defendant McKeithen submitted his own affidavit and the affidavit of Deborah Anderson (Doc. 35, Attachs. 1, 2).

In Defendant McKeithen's affidavit, he states that although he supervises BCSO employees in carrying out their duties, he does not become personally involved in the day-to-day activities of each employee (Doc. 35, Affidavit of Defendant McKeithen ¶ 2). Defendant McKeithen also states that he was not personally involved in the allegations of Plaintiff's complaint, nor does he have any knowledge of the allegations in Plaintiff's complaint (*id.* ¶ 3). Defendant McKeithen contends that, as of the date of Plaintiff's arrest for failure to register as a career offender, he was not aware of any policy of his deputies to arrest individuals without probable cause pursuant to the Act (*id.* ¶ 4(a)). Defendant McKeithen also states that he never received a complaint from Plaintiff regarding his treatment by the BCSO employees involved in this case until he was served with the instant Complaint (*id.* ¶ 3). Defendant McKeithen states that he has no knowledge of any instance in which an individual has been wrongfully arrested on a warrant for failure to report as a career offender (*id.* ¶ 4(a)). Defendant McKeithen further states that the individuals involved in this action were not previously the subject of complaints, claims, or lawsuits related to allegations of wrongful arrests for failure to report as a career offender (*id.* ¶ 4(b)). Defendant McKeithen argues that he had no reason to believe that the BCSO's process for making arrests on warrants related to the failure to register as a career offender was inadequate, nor was he aware of any abuse of this process by his employees (*id.* ¶ 4(b)).

In Deborah Anderson's supporting affidavit, she states that as an employee of the BCSO she oversees compliance with various categories of offenders who are required to register in their county of residence pursuant to the Act (Doc. 35, Affidavit of Ms. Anderson ¶ 2). Ms. Anderson does not, however, determine who must register, and she ensures compliance "only for those persons whose names are provided to [her] by the [FDLE]" (*id.* at 2–3). Ms. Anderson states that on September 1,

2006, she received correspondence from the FDLE advising the BCSO of amendments to the Act requiring registration of a broader category of offenders, which included individuals released from prison after <u>July 1, 2002</u>, whereas the previous version of the statute required offenders released after <u>January 1, 2003</u>, to register (*id.* ¶ 3). Included with the FDLE's correspondence was a list of persons "for whom registration was now required," and Plaintiff's name was on the list (*id.* & Ex. A). After Ms. Anderson received the information, she attempted to verify Plaintiff's address so that law enforcement could contact Plaintiff and instruct him to register at the BCSO (*id.* ¶ 4). Ms. Anderson obtained Plaintiff's address from his Florida driver's license and from the DOC website (*id.*). Since Plaintiff purportedly resided within the city limits of Panama City, Ms. Anderson requested that Defendant Smith verify Plaintiff's address (*id.*). Ms. Anderson states that Defendant Smith checked 1124 Bay Avenue and determined that the residence was abandoned (*id.* ¶ 5). Ms. Anderson then contacted Neil Delmar, a deputy with the BCSO, and requested that he verify an alternate address for Plaintiff provided by the FDLE which was 923 Sanders Lane, Apt. 703 (*id.* ¶ 6). Deputy Delmar notified Ms. Anderson that Plaintiff did not live at that residence (*id.*). Ms. Anderson then notified Defendant Smith of this information (*id.*). Ms. Anderson states that although she did not request that Defendant Smith arrest Plaintiff, she understands that pursuing an arrest warrant is normally the next step in the process if the person has failed to properly register as a career offender (*id.*). Ms. Anderson later became aware that a warrant for Plaintiff's arrest was issued (*id.*). Ms. Anderson states that at no time did she have any direct contact with Plaintiff (*id.*).

Defendant Smith, in his motion for summary judgment, contends that he is entitled to qualified immunity because he acted reasonably when he submitted the probable cause affidavit seeking Plaintiff's arrest for failure to register. In support of his motion for summary judgment, Defendant Smith submitted the following: (1) a copy of section 775.261 of the Florida Statutes (the Act), effective July 1, 2006 (Doc. 30, Ex. 6); (2) a determination by the circuit court of Plaintiff's Habitual Violent Felony Offender status in case number 95-0850 (*id.*, Ex. 7); (3) a copy of a judgment and sentence for case number 95-0850 (*id.*, Ex. 8); (4) a copy of a judgment and sentence for case numbers 90-3087 and 00-1800 (*id.*, Ex. 9); (5) Defendant Smith's supporting affidavit (*id.*, Ex. 1); (6) a copy of Defendant Smith's investigative report for Plaintiff's failure to register as a career offender (*id.*, Ex. 1-a); (7) a copy of the PCPD's offense report for Plaintiff's failure to

register as a career offender (*id.*, Ex. 1-b); (8) a copy of the PCPD's probable cause affidavit for Plaintiff's failure to register as a career offender (*id.*, Ex. 1-c); (9) a copy of the unexecuted warrant issued for Plaintiff's arrest for failure to register as a career offender (*id.*, Ex. 1-d); (10) a copy of the executed warrant for Plaintiff's arrest (*id.*, Ex. 2); (11) a copy of Plaintiff's motion to dismiss the Information charging him with failure to register as a career offender, along with a copy of the statute that Plaintiff's counsel relied on when filing the motion to dismiss (*id.*, Ex. 3); (12) a copy of the transcript from the hearing on Plaintiff's motion to dismiss (*id.*, Ex. 4); and (13) a copy of the clerk's records showing that Plaintiff's charge of failing to register as a career offender was dismissed on April 3, 2007 (*id.*, Ex. 5).

In Defendant Smith's supporting affidavit, he states that on September 8, 2006, Ms. Anderson requested his assistance in verifying Plaintiff's address at 1124 Bay Avenue (Doc. 30, Ex. 1, Affidavit of Defendant Smith ¶ 2). Defendant Smith checked the address and determined that the residence was abandoned (*id.* ¶ 4). Defendant Smith states that there was no water or power service to the structure, and some of the windows and doors were missing (*id.*). Defendant Smith notified Ms. Anderson that the residence had been abandoned (*id.* ¶ 6). Defendant Smith states that Ms. Anderson told him that Deputy Delmar had attempted to verify a second address at 923 Sanders Lane, and he determined that Plaintiff did not reside there (*id.*). Defendant Smith states that he understood, after speaking to Ms. Anderson, that Plaintiff had previously registered as a career offender by using the address of 1124 Bay Avenue for purposes of identification and registration (*id.* ¶ 7). Based on this information, Defendant Smith completed a probable cause affidavit on September 20, 2006, and applied to a Bay County Judge for an arrest warrant for Plaintiff's arrest for the charge of violation of the Act (*id.* ¶ 8).[6] A county judge issued an arrest warrant on

---

[6]Defendant Smith's probable cause affidavit states, in pertinent part, as follows:

> This detective [Defendant Smith] received a career offender address verification for a B/M subject by the name of Robin Watts [Plaintiff]. Mr. Watts has listed his address as 1124 Bay Ave. Panama City, Florida on both his career offender registration with the state and his Florida ID Card. A check of the address showed that Mr. Watts does not reside at the stated address as the home is abandoned with doors and windows missing or unsecured and no power or water to the home. It is unknown at this time where Mr. Watts resides. A complaint and warrant was completed for the arrest of Mr. Watts. To this point, pursuant to Florida Statute 938.27, the investigative cost incurred by this agency are $50.00.

Case No.: 5:07cv128/MCR/EMT

September 20, 2006, and Plaintiff was subsequently arrested by another law enforcement officer (*id.* ¶¶ 9, 10).

In Plaintiff's response to Defendants' motions for summary judgment Plaintiff reiterates the fact that when he was sentenced on September 25, 2000, he was not classified as a habitual felony offender, a violent career criminal offender, a three-time felony offender, or a prison releasee reoffender (Doc. 50 at 1). Plaintiff states that although he was classified as a violent habitual felony offender on December 4, 1995, he was released from prison on those charges on May 12, 1999, prior to the time the Act was passed by the Florida legislature (*id.*). Plaintiff further states that Defendant Smith reviewed the DOC's website on September 6, 2006, prior to submitting the probable cause affidavit for his arrest, and therefore he should have known that the offenses for which Plaintiff had been incarcerated were not subject to the Act (*id.* at 2). Plaintiff states that Defendant Smith also reviewed Plaintiff's information on the DHSMV website (*id.*). Plaintiff contends Defendants arrested him without probable cause, and that Defendant Smith is not entitled to qualified immunity because he submitted a probable cause affidavit containing statements which he knew were false (*id.* at 3–4). Plaintiff claims that Defendant Smith "recklessly disregarded the truth" (*id.* at 4).

As additional summary judgment material Plaintiff submitted the following: (1) a copy of Plaintiff's motion to dismiss the charge of failing to register as a career offender (*id.* at 7–8); (2) a copy of the BCSO's physical address verification form for Plaintiff (*id.* at 9–10); (3) a copy of the plea, waiver and consent form for case numbers 90-3087 and 00-1800-B (*id.* 11–12); (4) a copy of a DHSMV summary page for Plaintiff (*id.* at 13); (5) a copy of the inmate release information detail from the DOC showing Plaintiff's release date as December 10, 2002 (*id.* at 14); (6) a copy of the judgment and sentence for case numbers 90-3087 and 00-1800 (*id.* at 15–21); (7) a copy of a memorandum from FDLE to "all criminal justice agencies" dated December of 2002 (*id.* at 22); (8) a blank FDLE career offender registration form (*id.* at 23–24); and (9) a copy of a letter from Donna M. Uzzell, an FDLE employee, to Sheriff Tunnell, former Sheriff of the BCSO, dated December 31, 2002 (*id.* at 25–27).

II.     LEGAL STANDARDS

---

(Doc. 30, Ex. 1-c).

  A.  Summary Judgment Standard

  In order to prevail on their motions for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

  When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at

324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment.  *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

  B.  Fourth Amendment Standard

  Plaintiff claims that Defendants falsely arrested him in violation of the Fourth Amendment. The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause.  Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed.2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990).  However, a claim of false arrest is barred by the existence of probable cause or by the subsequent conviction of the accused.  *See* Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990); Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).

  A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  The existence of probable cause to arrest is based on objective standards.  Von Stein, 904 F.2d at 578 (citations omitted).  Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking.  Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9.

  Further, when qualified immunity is asserted as an affirmative defense to a civil action, the standard becomes even more stringent.  To overcome qualified immunity, the plaintiff must additionally show that probable cause could not even have been arguably thought to exist in the eyes of a reasonable officer judging from the facts at hand and the clearly established law at the time. *See* Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999) (citations omitted).  "Indeed, 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that

probable cause is present, and . . . in such cases those officials . . . should not be held personally liable.'" Von Stein, 904 F.2d at 579 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).

      C.      Supervisory and Municipal Liability

To the extent Plaintiff sues Defendant McKeithen in his individual capacity, it is well settled that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other

indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

Additionally, to the extent Plaintiff sues Defendant McKeithen in his official capacity as the policy maker of the BCSO, it is well settled that "a municipality cannot be held liable under § 1983 on a respondeat superior theory" for the actions of municipal employees. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability under § 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.* at 694; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)). To hold the municipality liable, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

D.   Qualified Immunity

The doctrine of qualified immunity is a guarantee of fair warning. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399

(1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* at 1194. The Supreme Court has established a two-pronged analysis for evaluating a claim of qualified immunity. The plaintiff must show (1) that the facts show a violation of a constitutional right, and (2) that the right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001), *receded from by* Pearson v. Callahan, No. 07-751, 2009 WL 128768 (Jan. 21, 2009) (while Saucier's two-step sequence for resolving government officials' qualified immunity claims is often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand). The court must assess the facts in a light most favorable to the party asserting the injury. *Id.*

With regard to whether the right was "clearly established," the very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. Hope, 536 U.S. 739; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. Hope, 536 U.S. at 739. Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional. *Id.* In light of pre-existing law, the unlawfulness must be apparent. *Id.*; Creighton, 483 U.S. at 640. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh

Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4. (11th Cir. 1997)).

In cases where improper motive is an element of the constitutional claim, a defendant is entitled to qualified immunity only when, among other things, "the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); *see also* Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996) ("the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted.").

III. CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

A. Defendant McKeithen

Upon review of the summary judgment record, the undersigned concludes that Plaintiff has failed to state a basis for liability as to Defendant McKeithen, and similarly, that there is insufficient evidence from which a jury could conclude that Defendant McKeithen caused Plaintiff to be falsely arrested. Plaintiff alleges that Defendant McKeithen should be held liable because he "signed" the warrant for Plaintiff's arrest (*see* Doc. 20 at 7). A review of the warrant, however, reveals that "Det. M. Smith" was the case agent (*see* Doc. 30, Ex. 2), and Defendant Smith has stated in his affidavit that he completed the probable cause affidavit and applied for Plaintiff's arrest warrant (Doc. 30, Affidavit of Defendant Smith ¶ 8). Although Defendant McKeithen's name appears on the warrant, it appears in the section that describes the execution of the warrant (*see* Doc. 30, Ex. 2). Specifically, the warrant indicates that it was executed on October 8, 2006, by "Deputy Stephen," a Deputy Sheriff, and "Frank McKeithen," the Sheriff (*id.*). Defendant McKeithen states in his affidavit, however, that he had no personal involvement in, and no knowledge of, the events underlying Plaintiff's complaint (Doc. 35, Affidavit of Defendant McKeithen ¶ 3). Thus, the facts establish that Defendant McKeithen had no personal involvement in the matters complained of by Plaintiff, even though his handwritten name appears on the executed warrant. However, even if a jury could conclude that Defendant McKeithen authorized or participated in the execution of the warrant because his name appears on the warrant, there is no evidence that he authorized execution of the

warrant or participated in its execution <u>knowing that it was based upon false information</u> (*see* Doc. 20 at 7; *see also* Doc. 30, Ex. 2).

Additionally, although Plaintiff generally alleges that the BCSO has a custom and policy of conducting address verifications of career offenders, this custom or policy is not violative of the constitution; indeed, it is the responsibility of the BCSO to oversee compliance with the provisions of Florida Statute § 775.261 (*see* Doc. 35, Affidavit of Ms. Anderson ¶ 2). Plaintiff's additional and conclusory allegation, that "Frank McKeithen has a policy or custom to arrest people who failed to register as violent career offenders that were not required to register as violent career offenders," has not factual support — Plaintiff alleges no facts showing that the BCSO engaged in a custom or policy of arresting individuals for failing to register as career offenders where the BCSO knew that the individual was not required to register (Doc. 20 at 5–7). Moreover, there is no evidence of any prior instances in which employees of the BCSO or Defendant Smith submitted false information to obtain an arrest warrant for failure to report as a career offender, or were accused of such behavior, such that Defendant McKeithen was put on notice that the warrant for Plaintiff's arrest was based on false information. Finally, Defendant Smith is an employee of the PCPD, not the BCSO where Defendant McKeithen "act[s] in an ultimate supervisory manner <u>with respect to the activities of Bay County deputy sheriffs and employees</u> in carrying out their duties" (Doc. 35, Affidavit of Defendant McKeithen ¶ 2) (emphasis added).

Lastly, to the extent Plaintiff claims Defendant McKeithen is vicariously liable for the actions of Ms. Anderson, a BCSO employee, Plaintiff's claim fails. As noted *supra*, Ms. Anderson oversees compliance with the statute governing registration, but she does not determine who must register — those names are provided to the BCSO by the FDLE (Doc. 35, Affidavit of Ms. Anderson ¶ 2). On September 1, 2006, Ms. Anderson received correspondence from the FDLE advising of amendments to the Act that required registration of a broader category of offenders, including Plaintiff (*id.* ¶ 3). Because Plaintiff's name was on the list of those persons falling into the broader category, Ms. Anderson took steps to verify Plaintiff's address so he could be contacted and instructed to register (*id.* ¶¶ 4, 5). This included contacting Defendant Smith, as one address she had for Plaintiff was within the city limits of Panama City, as well as Deputy Delmar, who was requested to check an alternate address (*id.* ¶¶ 6). When it was determined that Plaintiff did not live at either

address, Ms. Anderson advised Defendant Smith of this information, and this ended her direct involvement in the matter (*id.*). Ms. Anderson's actions were lawful, and therefore, Defendant McKeithen cannot be vicariously liable for her conduct.

In sum, because there is no evidence that Sheriff McKeithen was personally involved in the alleged constitutional violation, or that there was a sufficient causal connection between his policies, actions or omissions to support a basis for liability, Sheriff McKeithen is entitled to summary judgment, in both his individual and official capacities.

      B.      Defendant Smith

Defendant Smith contends he is entitled to qualified immunity because he was acting within the course and scope of his employment as a sworn police officer with the PCPD at all times material to Plaintiff's claims, and he had arguable, if not actual, probable cause to support his application for the arrest warrant. *See* Lee, 284 F.3d at 1195 (absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed). In pertinent part, Defendant Smith asserts that Plaintiff was indeed required to register as a career offender, and Plaintiff's charge of "failure to register" was dismissed only because Plaintiff's counsel, in a motion to dismiss, cited the previous version of the statute, not the amended version (*see* Doc. 29 at 5; Doc. 30, Ex. 3). Moreover, Defendant Smith asserts that: (1) he was requested by Ms. Anderson to verify the reported address of Plaintiff, a career offender, at 1124 Bay Avenue, where Plaintiff has previously registered as a career offender; (2) when Defendant Smith arrived at the Bay Avenue address, it appeared to be abandoned; (3) he was advised by Ms. Anderson that Deputy Delmar determined that Plaintiff did not reside at an alternate address; and (4) because neither the BCSO nor the PCPD could verify Plaintiff's residence, Defendant Smith applied for an arrest warrant (Doc. 30, Affidavit of Defendant Smith ¶¶ 2–8). These facts clearly establish that Defendant Smith was acting in his discretionary authority, thus the burden shifts to Plaintiff to show that Defendant Smith has violated a clearly established constitutional right.

In response, Plaintiff contends there is a genuine issue of material fact as to whether Smith had arguable probable cause to request an arrest warrant because Defendant Smith reviewed the following information prior to submitting the probable cause affidavit: (1) a copy of Officer Delmar's report and handwritten notes in which Delmar attempted to verify Plaintiff's address at

923 Sanders Lane; (2) Plaintiff's "individual summary page" from the DHSMV website dated September 20, 2006; and (3) Plaintiff's "inmate release information detail" from the DOC's website (Doc. 50 at 2, 9–10, 13, 14).

The facts establish that Defendant Smith applied for a warrant based upon his understanding from Ms. Anderson that Plaintiff was required to register as a career offender, that Plaintiff had previously registered as a career offender using the address of 1124 Bay Avenue, his determination that the Bay Avenue residence was abandoned, and his knowledge that neither the BCSO nor the PCPD could verify Plaintiff's current residence. Viewing the facts in the light most favorable to Plaintiff, Defendant Smith had arguable, if not actual, probable cause to seek a warrant for Plaintiff's arrest.[7] "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" Lee, 284 F.3d at 1195 (quoting Scarborough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001)).

Even if Defendant Smith had reviewed the information on the DHSMV and DOC websites prior to submitting the probable cause affidavit, the information would not have assisted him in determining whether Plaintiff was classified as a career offender at the time of sentencing, as none of the information indicates whether Plaintiff's sentence was enhanced pursuant to the Act. To the extent Plaintiff claims that Defendant Smith reviewed the DOC website and should have known that individuals released on or before Plaintiff's expected release date were not required to register, his argument fails, because the change in the law would have suggested the opposite, that Plaintiff was required to register. Moreover, the information provided to Defendant Smith by Ms. Anderson — who had been directly contacted by the FDLE and specifically advised that Plaintiff was required to register — is more reliable than general information Defendant Smith might have obtained from

---

[7]The evidence establishes that Plaintiff was determined to be a habitual violent felony offender ("HVFO") in 1995 (see Doc. 30, Ex. 8 at 4). Moreover, since Plaintiff was released from prison in December 2002, it appears that he was required to register as a career offender (a career offender includes "any person who is designated as a [HVFO]") due to the amendment to the law (see, e.g., Fla. Stat. 775.261 (effective date July 1, 2006, requiring HVFOs released after July 1, 2002 to register); Doc. 35, Affidavit of Ms. Anderson & Ex. A (letter from FDLE to Ms. Anderson, advising of change to the statute and indicating that Plaintiff was required register)). Indeed, as noted supra, Defendant Smith contends the dismissal of Plaintiff's "failure to register" charge was erroneous because it was based upon a motion to dismiss filed by Plaintiff's defense counsel that cited the earlier version of the statute. It matters not, however, whether the dismissal was erroneous — the record, viewed in the light most favorable to Plaintiff, establishes that Defendant Smith had probable cause to seek a warrant for Plaintiff's arrest.

Case No.: 5:07cv128/MCR/EMT

a website. Additionally, to the extent Plaintiff asserts Defendant Smith reviewed Plaintiff's DHSMV paperwork and should have known that Plaintiff was not required to register as there was no career offender registration insignia on Plaintiff's driver's license, that argument likewise fails because Defendant Smith reasonably relied on the information obtained from Ms. Anderson to submit a probable cause affidavit. Moreover, Ms. Anderson reviewed both Plaintiff's driver's license and the DOC website to obtain "release information detail" for Plaintiff (*see* Doc. 35, Affidavit of Ms. Anderson ¶ 4), but her review of these records obviously did not change her opinion that Plaintiff was required to register. Thus, the court concludes that Defendant Smith had arguable, if not actual, probable cause to submit an affidavit for a warrant for Plaintiff's arrest, his actions were motivated by lawful considerations, and no constitutional violation occurred. Thus, Defendant Smith is entitled to qualified immunity, and his motion for summary judgment should be granted.

### C. State Tort Claims

Plaintiff appears to additionally assert state tort claims, including false arrest, false imprisonment, malicious prosecution and defamation against Defendants. In light of the court's recommendation that Plaintiff's federal claims be dismissed and Defendants' motions for summary judgment be granted, the undersigned concludes that Plaintiff's state law claims should be dismissed and this cause of action dismissed.

It is well established that once Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants. *See* Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994); Executive Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett County, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in

this case, the court concludes that Plaintiff's state law claims should be dismissed to permit him to pursue his state law claims in a more appropriate forum. While it would be convenient for the Plaintiff to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases. Furthermore the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendants' motions for summary judgment (Docs. 29, 34) be **GRANTED** as to Plaintiff's Fourth and Fourteenth Amendment claims.

2. That Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to assert them in state court.

3. That judgment be entered in favor of Defendants.

At Pensacola, Florida this 3rd day of February 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**